# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE APPLICATION OF FORBES
MEDIA LLC AND THOMAS
BREWSTER TO UNSEAL COURT
RECORDS

Misc. Action No. 2:21-MC-52

Related to: Case No. 15-880

FILED

JAN 25 2021

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF APPLICATION OF FORBES MEDIA LLC AND
## THOMAS BREWSTER TO UNSEAL COURT RECORDS

PAULA KNUDSEN BURKE
pburke@rcfp.org
KATIE TOWNSEND*
ktownsend@rcfp.org
The Reporters Committee For
Freedom Of The Press
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
*Pro hac vice application pending

Counsel for Applicants Forbes Media
LLC and Thomas Brewster

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................................................I

PRELIMINARY STATEMENT................................................................................1

FACTUAL BACKGROUND.....................................................................................2

ARGUMENT .............................................................................................................5

I.    The public has a strong interest in access to the sealed AWA Materials.........5

II.   The public has a constitutional and common-law right to access the AWA
Materials...............................................................................................................8

    A.  The public has a common-law right of access to the AWA Materials.......8

    B.  The public has a constitutional right of access to the AWA Materials. ...10

III.  The public's rights of access can be overcome only on a compelling showing
that the government cannot make in this case.................................................15

CONCLUSION.........................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Bank of Am. Nat'l Trust & Sav. Ass'n v. Rittenhouse Associates*, 800 F.2d 339 (3d Cir. 1986) ...................................................................10, 11, 12, 13

*Carpenter v. United States*, 138 S. Ct. 2206 (2018).............................................8, 9

*Doe Co. v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ...............................12, 14, 15

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406 (D.C. Cir. 1996) .....................10

*FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987) .........................8

*Gannett Co. v. DePasquale*, 443 U.S. 368 (1979) ................................................16

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ..........................14

*In re Avandia Marketing Sales Practice & Products Liability Litig.*, 924 F.3d 662 (3d Cir. 2019)................................................................................17, 18

*In re Cendant Corp.*, 260 F.3d 183 (3d Cir. 2001) ................................................17

*In re Copley Press*, 518 F.3d 1022 (9th Cir. 2008) ..........................................12, 18

*In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121 (D.C. Cir. 2020)...............................................10, 12, 16

*In re Motion to Compel Facebook to Provide Technical Assistance*, 357 F. Supp. 3d 1041 (E.D. Cal. 2019) ..................................................................17

*In re Motions of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998) ......................12

*In re N.Y. Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008).................................13, 18

*In re One Gray and Black Colored Apple iPhone*, No. 1:16-mj-02007 (D. Mass. Apr. 8, 2016) ......................................................................................15, 18

*In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876 (S.D. Tex. 2008).......................................................................10

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988):..........................................................................................15

*In the Matter of the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, California License Plate 35KGD203*, No. ED 15-0451M, 2016 WL 618401 (C.D. Cal. Feb. 16, 2016) .........................3

*Leucadia, Inc. v. Applied Extrusion Tech.*, 998 F.2d 157 (3d Cir. 1993) ..........7, 16

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ..............................................13

i

*Press-Enter. Co. v. Superior Court*, 464 U.S. 501 (1984) ("*Press-Enterprise I*")...6, 16

*Press-Enter. Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*") ...11, 16

*Reed v. Bernard*, 876 F.3d 302 (3d Cir. 2020)...........................................................9

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653 (3d Cir. 1991) 9

*Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555 (1980) .............................6, 7

*Riley v. California*, 573 U.S. 373 (2014)...................................................................8

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) ..............................................................7

*Smith v. U.S. District Court*, 956 F.2d 647 (7th Cir. 1992)......................................8

*Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562 (7th Cir. 2000).............................12

*United States v. Appelbaum*, 707 F.3d 283 (4th Cir. 2013) ...................................11

*United States v. Aref*, 533 F.3d 72 (2d Cir. 2008).....................................................8

*United States v. Business of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011) ..........................................................................................................17, 18

*United States v. Criden*, 675 F.2d 550 (3d Cir. 1982) ( ..........................................14

*United States v. Index Newspapers*, 766 F.3d 1072 (9th Cir. 2014) ...........12, 16, 18

*United States v. Mendoza*, 698 F.3d 1303 (10th Cir. 2012)....................................14

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977) .............................................2, 5

*United States v. Raffoul*, 826 F.2d 218 (3d Cir. 1987)...........................................16

*United States v. Ressam*, 221 F. Supp. 2d 1252 (W.D. Wash. 2002)................12, 13

*United States v. Smith*, 123 F.3d 140 (3d Cir. 1997)...........................................9, 11

*United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985) ("*Smith I*")..........................7

*United States v. Smith*, 787 F.2d 111 (3d Cir. 1986) ("*Smith II*")...........................7

*United States v. Thomas*, 905 F.3d 276 (3d Cir. 2018) ............................................9

**Statutes**

28 U.S.C. § 1651 ....................................................................................................1, 2

Judiciary Act of 1789, ch. 20, 1 Stat. 73 ..................................................................2

**Other Authorities**

3 Edward Coke, Reports (London, E. & R. Nutt & R. Gosling 1738) (1602) ........14

Alan Z. Rozenshtein, *Surveillance Intermediaries*, 70 Stan L. Rev. 99 (2018)........4

Jack Nicas & Katie Benner, *F.B.I. Asks Apple to Help Unlock Two iPhones*, N.Y. Times (Jan. 7, 2020), https://perma.cc/HBM2-TRVZ ..........................................3

Janus Rose, *Apple's Next Encryption Battle is Likely Playing Out in Secret in a Boston Court*, Vice (Mar. 31, 2016), https://perma.cc/X7UA-D9YV .................19

Justin Wm. Moyer, *FBI Director Makes Personal, Passionate Plea on Apple-San Bernardino Controversy*, Wash. Post (Feb. 22, 2016), https://perma.cc/J29X-S8X3 ............................................................................................................17

Note, *Cooperation or Resistance?: The Role of Tech Companies in Government Surveillance*, 131 Harv. L. Rev. 1722 (2018) ........................................................4

Samuel I. Ferenc, Note, *Clear Rights and Worthy Claimants: Judicial Intervention in Administrative Action Under the All Writs Act*, 118 Colum. L. Rev. 127 (2018) ........................................................................................................12

Thomas Brewster, *The FBI Is Secretly Using a $2 Billion Travel Company as a Global Surveillance Tool*, Forbes (July 16, 2020), https://perma.cc/R96R-AXL9 ...........................................................................................................1, 4, 5

## PRELIMINARY STATEMENT

Applicants Forbes Media LLC ("Forbes") and its Associate Editor Thomas Brewster ("Brewster") seek access to certain sealed court records relating to an order under the All Writs Act, 28 U.S.C. § 1651, that required Sabre, a travel technology firm, to assist the United States government in effectuating an arrest warrant (hereinafter, the "AWA Order"). Applicants are informed and believe that the order was issued by the district court in Case No. 15-880. *See* Ex. 1 at 4. Applicant respectfully request that the Court unseal the AWA Order; the government's application for the AWA order and any supporting documents, including affidavits; and any other court records relating to the AWA Order, including, but not limited to, any motions to seal, the docket in Case No. 15-880, and all docket entries (collectively, the "AWA Materials").

The government's use of the All Writs Act to obtain judicial orders requiring private technology firms in general—and Sabre in particular— to provide technical assistance to the government is a matter of intense public interest, as well as a subject of Applicants' reporting. *See, e.g.*, Thomas Brewster, *The FBI Is Secretly Using a $2 Billion Travel Company as a Global Surveillance Tool*, Forbes (July 16, 2020), https://perma.cc/R96R-AXL9. Unsealing the AWA Materials will shed light on the scope of the government's authority to compel such assistance, provide valuable insight into Sabre's role in monitoring travelers on behalf of law

enforcement, and inform the press and public about the extent of their privacy when travelling.

**FACTUAL BACKGROUND**

I.   **The government's use of the All Writs Act to obtain technical assistance from private technology companies is a matter of intense public interest.**

Originally adopted in connection with the Judiciary Act of 1789, *see* Judiciary Act of 1789, ch. 20, §§ 13–14, 1 Stat. 73, 80–82, the All Writs Act in its current form authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages principles of law," 28 U.S.C. § 1651. Though the All Writs Act may be used to issue orders for a range of procedural purposes, All Writs Act orders requiring private technology firms to provide the United States government with "technical assistance" are of particular public interest. *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 171 (1977). In perhaps the highest-profile example, the government in 2016 sought an order under the Act that would have required Apple to provide a means of bypassing security measures on an iPhone that belonged to one of the shooters in the San Bernardino terrorist attack. *See In the Matter of the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, California License Plate 35KGD203*, No. ED 15-0451M, 2016 WL 618401, at *1 (C.D. Cal. Feb. 16, 2016). Before it was mooted, that litigation sparked a wide-ranging public debate on the wisdom and legality of such technical assistance

2

orders. *See, e.g., Amicus Briefs in Support of Apple*, Apple (Mar. 2, 2016),

https://perma.cc/PL6K-S6WZ (collecting court filings and public statements

opposing the requested order).

 The underlying legal and public policy questions raised by the San

Bernardino litigation remain unresolved. *See, e.g.,* Jack Nicas & Katie Benner,

*F.B.I. Asks Apple to Help Unlock Two iPhones*, N.Y. Times (Jan. 7, 2020),

https://perma.cc/HBM2-TRVZ (describing a new FBI push to require access to

encrypted devices). As a result, the national conversation about the appropriate

scope of such compelled assistance continues unabated. *Compare, e.g.,* Alan Z.

Rozenshtein, *Surveillance Intermediaries*, 70 Stan L. Rev. 99, 176–177 (2018)

(arguing that private firms' resistance to technical-assistance orders undermines

self-government), *with* Note, *Cooperation or Resistance?: The Role of Tech*

*Companies in Government Surveillance*, 131 Harv. L. Rev. 1722, 1724 (2018)

(arguing that the picture is "more complicated" and that firms play an important

role in checking the government).

**II.**   **The government has used the All Writs Act to obtain orders requiring**
  **Sabre to provide real-time intelligence about travelers' activities.**

 As Applicants' have reported, circumventing encryption is not the only

context in which the All Writs Act has been invoked to compel private companies

to assist federal government surveillance efforts. *See* Brewster, *supra.* According

to court records unsealed in the Southern District of California in February 2020,

the government has used the Act to require Sabre, a leading travel technology company, to engage in "real-time" monitoring of travelers who are the subject of an active arrest warrant for the government. *See* Ex. 1 at 4. Sabre is one of the three largest players in its market, responsible for more than one-third of global air travel bookings. *See* Brewster, *supra*. As a result, it has a staggering volume and diversity of records, including "itineraries, fares, reservations, connecting flights and ticket costs," as well as "crew schedules and other logistical information." *Id.*

Pursuant to the All Writs Act, the government has sought orders requiring Sabre "to provide representatives of the FBI complete and contemporaneous 'real time' account activity information" on targeted travelers, what the government has described as a "hot watch." Ex. 1 at 2, 4. As Applicants reported, Marc Zwillinger—one of Apple's attorneys in the San Bernardino matter—described that request as "unusual and excessive" inasmuch as routine reliance on such orders would make Sabre a de facto "agent" of law enforcement. Brewster, *supra*. He expressed doubts, too, whether the application adequately established that the order was necessary and not unreasonably burdensome. *See id*; *New York Tel. Co.*, 434 U.S. at 171–75 (discussing limits on technical-assistance orders under the All Writs Act, including the extent of the burden to be imposed).

## III.    The sealed AWA Materials in this District concern a similar AWA Order to Sabre.

In support of its application in the Southern District of California, the government identified several other instances in which it had asked for—and obtained—orders under the All Writs Act that imposed similar surveillance obligations on Sabre. *See* Ex. 1 at 4. One of them, identified in the application as Case No. 15-880, was issued by the Western District of Pennsylvania. *Id.* Applicants are informed and believe that the matter is still under seal.

## ARGUMENT

### I. The public has a strong interest in access to the sealed AWA Materials.

Openness is "an indispensable attribute" of our judicial system. *Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555, 569 (1980). It guards against unfairness and inequity in the application of the law, as "the sure knowledge that *anyone*" may monitor the operation of the courts "gives assurance that established procedures are being followed and that deviations will become known." *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*") (italics original). Just as importantly, that transparency "provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness." *United States v. Smith*, 787 F.2d 111, 114 (3d Cir. 1986) ("*Smith II*") (quoting *Leucadia, Inc. v. Applied Extrusion Tech.*, 998 F.2d 157, 161 (3d Cir. 1993)). "People in an open society do not demand infallibility from their

institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572.

The news media plays a vital role in facilitating public oversight of the judicial system. As the Supreme Court has recognized, "[a] responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field." *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966). Members of the media function as "surrogates for the public" by, for instance, attending proceedings, reviewing court filings, and reporting on the business of the judiciary. *Richmond Newspapers*, 448 U.S. at 573. And it is well-settled, to that end, that the public and press have a right of access to court documents that arises from the public's interest in observing the consideration and disposition of matters by federal courts. *See United States v. Smith*, 776 F.2d 1104, 1111–12 (3d Cir. 1985) ("*Smith I*").

The public's right of access is especially powerful in matters, like this one, that concern actions taken by the executive. As the Seventh Circuit has explained, "in such circumstances, the public's right to know what the executive is about coalesces with the right of the citizenry to appraise the judicial branch." *Smith v. U.S. District Court*, 956 F.2d 647, 650 (7th Cir. 1992) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)). The principle that "courts must impede scrutiny of the exercise of [judicial] judgment only in the rarest of

circumstances" has special force, then, where "a judicial decision accedes to the requests of a coordinate branch, lest ignorance of the basis for the decision cause the public to doubt" the judiciary's independence. *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008). Unsealing the AWA Materials at issue will ensure that actions of both the executive and judicial branches are open to public scrutiny, and will help inform the active, ongoing debate over the government's use of the All Writs Act to compel private technology companies to provide technical assistance.

The sealed AWA materials sought by Applicants here are of particular public interest in light of the weighty constitutional and policy interests implicated by location tracking. As the Supreme Court recently reaffirmed, "location records 'hold for many Americans the privacies of life.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (quoting *Riley v. California*, 573 U.S. 373, 403 (2014)). Their disclosure to the government can burden a broad range of First and Fourth Amendment values, including reporter-source confidentiality. *See generally* Br. Amici Curiae of the Reporters Committee for Freedom of the Press and 19 Media Organizations in Support of Petitioner, *Carpenter*, 138 S. Ct. 2206. And the Court has, in that vein, shown "special solicitude for location information" even when those location records are held by a third-party, such as Sabre. *Carpenter*, 138 S. Ct. at 2219. For that reason too, the press and public have a keen interest in understanding the government's basis for seeking an AWA Order directing Sabre

to provide it with contemporaneous—or "real-time"—travel information about a targeted individual or individuals, and the court's basis for issuing that order.

## II. The public has a constitutional and common-law right to access the AWA Materials.

The Third Circuit has recognized two overlapping rights of access to court records: a "First Amendment right of access to the courtroom [that] includes a right of access to documents resulting from those court proceedings," *Reed v. Bernard*, 876 F.3d 302, 306 (3d Cir. 2020), and a "common law right 'to inspect and copy public records and documents, including judicial records and documents,'" *United States v. Thomas*, 905 F.3d 276, 284 (3d Cir. 2018) (quoting *United States v. Smith*, 123 F.3d 140, 155 (3d Cir. 1997)). Under either framework, the press and public have a presumptive right of access to the AWA Materials at issue here.

### A. The public has a common-law right of access to the AWA Materials.

The press and public have a common-law right to access the AWA Materials, which are unquestionably "judicial records." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991). As a general matter, "the filing of a document gives rise to a presumptive right of public access." *Leucadia*, 998 F.2d at 161–62. Certainly "[t]here is no doubt that the court orders themselves are judicial records," since "[c]ourt decisions are the 'quintessential business of the public's institutions.'" *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1128 (D.C. Cir. 2020)

(quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)); *see also Bank of Am. Nat'l Trust & Sav. Ass'n v. Rittenhouse Associates*, 800 F.2d 339, 344 (3d Cir. 1986) ("[T]he court's approval of a settlement or action on a motion are matters which the public has a right to know about and evaluate."). Indeed, the AWA materials are in, as one court put it, the "top drawer of judicial records," which contains "documents authored or generated by the court in discharging its public duties, including opinions, orders, judgment, [and] docket sheets"— a drawer that is "hardly ever closed to the public." *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 891 (S.D. Tex. 2008). So too with the AWA Order and the court's docket sheet.

The common-law right likewise attaches to the government's applications requesting such orders, and any supporting documents. An application for an order to a third-party under the All Writs Act is analytically no different than any other motion, petition, or application seeking court-ordered relief. The Act is routinely invoked in open court, in that vein, to request a range of common-law writs and several varieties of equitable relief that determine the obligations of third parties. *See* Samuel I. Ferenc, Note, *Clear Rights and Worthy Claimants: Judicial Intervention in Administrative Action Under the All Writs Act*, 118 Colum. L. Rev. 127, 139–141 (2018) (collecting contexts). Such materials, "filed with the objective of obtaining judicial action or relief," are quintessentially judicial

records. *United States v. Appelbaum*, 707 F.3d 283, 295 (4th Cir. 2013). Just as

the public has a strong interest in the court's own "action on a motion," *Bank of*

*Am.*, 800 F.2d at 344, citizens are entitled to understand the party submissions that

were the basis for the court's determination of substantive rights.

## B. The public has a constitutional right of access to the AWA Materials.

In addition to a presumptive common-law right to inspect the AWA

Materials, the public also has a constitutional right of access to those judicial

records. In determining whether the First Amendment affords a right of access to a

document at any particular stage in a judicial process, courts look to the

complimentary considerations of "experience and logic" — that is, "whether the

place and process have historically been open to the press and general public" and

"whether public access plays a significant positive role in the functioning of the

particular process in question." *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8,

9 (1986) ("*Press-Enterprise II*"); *see also Smith*, 123 F.3d at 146–7. Applying

those principles here, the First Amendment right attaches to the AWA Materials.

### 1. *The public has a constitutional right of access to the AWA Order.*

As to the AWA Order itself "it should go without saying that [a] judge's

opinions and orders belong in the public domain." *Union Oil Co. of Cal. v.*

*Leavell*, 220 F.3d 562, 568 (7th Cir. 2000); *see also United States v. Ressam*, 221

F. Supp. 2d 1252, 1262 (W.D. Wash. 2002) (emphasizing the "venerable tradition

10

of public access to court orders"). As the D.C. Circuit recently observed, "since at least the time of Edward III, judicial decisions have been held open for public inspection." *In re Leopold*, 964 F.3d at 1128 (citing 3 Edward Coke, Reports, at iii-v (London, E. & R. Nutt & R. Gosling 1738) (1602)); *see also Bank of Am.*, 800 F.2d at 345 (emphasizing "centuries of tradition of open access to court documents and *orders*" (emphasis added)). Logic informs that history: "Without access to judicial opinions, public oversight of the courts, including the processes and the outcomes they produce, would be impossible." *Doe Co. v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014).

Applying that principle, federal appellate courts have consistently recognized a right of access to a variety of miscellaneous orders, *see United States v. Index Newspapers*, 766 F.3d 1072, 1093 (9th Cir. 2014) (contempt order); *In re Copley Press*, 518 F.3d 1022, 1026 (9th Cir. 2008) (order granting motion to seal); *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 502 (D.C. Cir. 1998) (order denying motion to unseal), as have other district courts, *see, e.g., Ressam*, 221 F. Supp. 2d at 1262 (protective order). And, particularly in the context of warrants and other judicial records related to criminal investigations, access to court orders plays the critical role of assuring the public "that judges are not merely serving as a rubber stamp for the police." *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 88 (D.D.C. 2008). So too here. At base, while the Third Circuit has not had occasion to

address application of the First Amendment right of access to All Writs Act orders

in particular, there is no reason to exempt orders issued pursuant to the All Writs

Act from the usual presumption of "public access to court orders." *Ressam*, 221 F.

Supp. 2d at 1262; *see Bank of Am.*, 800 F.2d at 345.

2. *The public has a constitutional right of access to the application and supporting materials.*

The public also has a First Amendment right of access to the application and

any supporting materials. The Third Circuit has not addressed the application of

the "experience and logic" framework to All Writs Act applications, in particular,

but as discussed *supra* Part II.A, such applications play the same role in the

adjudicatory process that other, presumptively accessible motions for court-ordered

relief do. Many of the forms of relief authorized by the Act have traditionally been

sought in open court; the propriety of any particular writ of mandamus, for

instance, is plainly the kind of question that has long been litigated in public. *See*

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 137 (1803). Logic points in the same

direction: "The public has an interest in learning . . . the evidence and records"

that underpinned a court order determining the legal obligations of a third-party, or

else the public cannot judge for itself whether the court's order has a valid basis.

*Pub. Citizen*, 749 F.3d at 267. The government has already implicitly recognized

as much in the All Writs Act context. The Justice Department favored litigating

the validity of its technical assistance request to Apple in public view on the theory

that the public, apprised of the government's reasons for seeking such an order, would be more likely to believe that the government was justified in applying to the court for relief. *Cf.* Justin Wm. Moyer, *FBI Director Makes Personal, Passionate Plea on Apple-San Bernardino Controversy*, Wash. Post (Feb. 22, 2016), https://perma.cc/J29X-S8X3.

### 3. *The public has a constitutional right of access to the docket sheet in Case No. 15-880.*

Finally, the public and press have a First Amendment right of access to the docket sheet reflecting the AWA Materials filed with the Court. There is a "centuries-long history of public access to dockets." *United States v. Mendoza*, 698 F.3d 1303, 1304 (10th Cir. 2012). The Third Circuit has recognized, too, that "[t]he case dockets maintained by the clerk of the district court are public records." *United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982) ("*Criden II*") . Other federal appellate courts have likewise recognized a right of access to docket sheets, *see Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004); *Pub. Citizen*, 749 F.3d at 268, including in the particular context of warrant materials, *see In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 575 (8th Cir. 1988).

To hold otherwise would make nonsense of the right of access, since without a docket that gives notice of the existence of an application or order, the public would have no opportunity to oppose "closure of a document or proceeding that is

itself a secret." *Pub. Citizen*, 749 F.3d at 268. Applicants' ability to assert their

rights in this very case, for instance, is grounded in the fortuity that the existence of

the AWA Order was referenced in an entirely different public document. The

same dynamic unfolded in the case of an All Writs Act application and order

unsealed in the District of Massachusetts in 2016. The ACLU was able to assert its

right of access only because the order's existence was referenced in a public search

warrant affidavit. *See* Janus Rose, *Apple's Next Encryption Battle is Likely*

*Playing Out in Secret in a Boston Court*, Vice (Mar. 31, 2016),

https://perma.cc/X7UA-D9YV. The government in that case promptly conceded

that there was no continued need to seal the application and order. *See* Motion to

Unseal, *In re One Gray and Black Colored Apple iPhone*, No. 1:16-mj-02007 (D.

Mass. Apr. 8, 2016). But if not for that affidavit's reference to the matter, a docket

that could not validly be sealed would have remained sealed indefinitely.

At heart, as the D.C. Circuit explained in articulating the common-law right

of access to certain electronic surveillance orders, "[i]t would make little sense to

provide public access to court documents but not to the indices that record them

and thus make them accessible." *In re Leopold*, 964 F.3d at 1129. "[I]f the

constitutional right of the press and public to have access is to have substance,

representatives of these groups must be given an opportunity to be heard on the

question of their exclusion." *United States v. Raffoul*, 826 F.2d 218, 224 (3d Cir.

14

1987) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 401 (1979) (Powell, J.,

concurring)).    But press and public have no opportunity to assert their rights

absent "a meaningful ability for the public to find and access those documents" to

which the right attaches. *Index Newspapers*, 766 F.3d at 1086.  Experience and

logic therefore dictate that the public has a right of access to the docket sheet in

Case No. 15-880.

III.    **The public's rights of access can be overcome only on a compelling
        showing that the government cannot make in this case.**

The rights of access at issue here are weighty.  Where the First Amendment

right attaches, records can be sealed only if "specific, on the record findings are

made demonstrating that 'closure is essential to preserve higher values and is

narrowly tailored to serve that interest.'" *Press-Enterprise II*, 478 U.S. at 13–14

(quoting *Press-Enterprise I*, 464 U.S. at 510).  The common-law right, for its part,

creates a "strong" presumption of access, *Leucadia*, 998 F.2d at 165, and the party

supporting sealing "bears the burden of showing . . . that disclosure will work a

clearly defined and serious injury to the party seeking closure." *In re Cendant

Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (internal quotation omitted).  In this

inquiry, "[b]road allegations of harm, bereft of specific examples or articulated

reasoning, are insufficient." *Id.*  No such showing can be made here.

This is not, for instance, a case in which the government can claim an

interest in preserving "the secrecy of law enforcement techniques" described in the

Sabre application. *In re Motion to Compel Facebook to Provide Technical Assistance*, 357 F. Supp. 3d 1041, 1044 (E.D. Cal. 2019). The fact that Sabre engages in "hot-watch" monitoring of travelers on behalf of the government is already public. *See* Brewster, *supra*. Moreover, the existence of the particular AWA Order at issue—which dates back to 2015—also is already public. *Id.* And, to the extent the AWA Materials contain information that the government nevertheless can demonstrate it has a compelling or countervailing interest in maintaining under seal, the Court "can accommodate those concerns by redacting sensitive information rather than refusing to unseal the materials entirely." *United States v. Business of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011); *see also In re Avandia Marketing Sales Practice & Products Liability Litig.*, 924 F.3d 662, 677 (3d Cir. 2019) (emphasizing that the "exacting analysis our precedents require" forbids a "broad-brush" or "collective evaluation of the harm alleged" by the party seeking sealing, as opposed to a close "document-by-document review").

Those conclusions are fortified by the likelihood that the underlying arrest warrant, which is now several years old, has already been executed. As other courts have explained in elaborating the common-law right of access, "[p]ost-investigation . . . warrant materials 'have historically been available to the public.'" *Custer Battlefield*, 658 F.3d at 1193 (quoting *In re N.Y. Times Co.*, 585 F. Supp. 2d

at 88). At that stage of a proceeding, the government's secrecy interests are sharply attenuated—the search or arrest has been accomplished—and the balance shifts decisively in favor of the public's interest in "keepi[ng] a watchful eye on the workings of public agencies." *Id.* at 1194 (internal quotation omitted) (alteration in original); *cf. In re Avandia*, 924 F.3d at 679 ("Outdated evidence . . . is insufficient to overcome the presumption of public access.").[1] The same considerations are instructive in weighing the government's interest—to the extent it can, in fact, demonstrate one—in maintaining the AWA Materials at issue here under seal. *Cf. In re One Gray and Black Colored Apple iPhone Telephone*, No. 1:16-mj-02007 (D. Mass. Apr. 8, 2016) (minute order) (granting the government's motion to unseal All Writs Act materials where the corresponding search warrant had already been executed).

## CONCLUSION

For the foregoing reasons, Applicants respectfully request that the Court enter an order unsealing the AWA Materials.

---

[1]    Regardless of the investigation's status, the public has a right of access to related sealing motions and orders. *See In re Copley Press*, 518 F.3d at 1026. "Logic . . . dictates that the record of these types of proceedings should be open to the public," at least in part, "because the very issue at hand is whether the public should be excluded or included in various types of judicial proceedings." *Index Newspapers*, 766 F.3d at 1096.

Dated: January 22, 2021

Respectfully submitted,

*s/ Paula Knudsen Burke*

Paula Knudsen Burke [PA 87607]
pburke@rcfp.org
Katie Townsend*
ktownsend@rcfp.org
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Pro hac vice application pending*

*Counsel for Applicants Forbes Media LLC
and Thomas Brewster*

18