IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: APPLICATION OF FORBES MEDIA LLC AND THOMAS BREWSTER TO UNSEAL RECORDS | MISC. NO. 21-52<br><br>*[EX PARTE & UNDER SEAL]* |

REDACTED BY ORDER OF 12-2-2022

## GOVERNMENT'S RESPONSE IN OPPOSITION TO APPLICATION TO UNSEAL COURT RECORDS

The United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Shardul S. Desai, Assistant United States Attorney for said District, respectfully submits this response in opposition to the petition by Forbes Media LLC and Thomas Brewster (collectively, "petitioners") to unseal certain court records. Neither the First Amendment nor the common law requires this Court to unseal the records that petitioners seek to review, and compelling law-enforcement interests demand the continued sealing of those materials. The Court, therefore, should deny the petition.

## BACKGROUND

According to the Petitioners, they seek the public release of records relating to the government's application for an order under the All Writs Act, 28 U.S.C. § 1651, in connection with a criminal investigation. The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. A federal court thus may "issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977). As relevant here, the All Writs Act "permits the district court, in aid of a valid warrant, to order a third party to provide nonburdensome technical assistance

1

to law enforcement officers." *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1289 (9th Cir. 1979).

Petitioners' assertions are based an application for an All Writs Act order in the Southern District of California (the SDCA application and order). *See* Petitioners' Brief, Dkt # 2, at 5. This SDCA application and order are actually under seal. The SDCA application and order were filed under seal. However, due to an error by a clerk of court, the application and resulting order were inadvertently unsealed. At that time, Petitioners obtained a copy of the application and resulting order. This error has since been caught and corrected, and the SDCA application and order are currently under seal. At the time the Petitioners filed the instant motion in this case, the SDCA application and order were under seal.

Here, the petitioners assert that the records they seek to unseal relate to the government's efforts to execute a federal arrest warrant in connection with an ongoing law enforcement efforts to apprehend a fugitive. Petitioners assert that the government submitted an *ex parte* application for an order under the All Writs Act, 28 U.S.C. § 1651, to require Sabre, a travel-commerce platform, to assist in the execution of the warrant. Such an All Writs Act application would likely contain highly sensitive, non-public information such as the identity of an individual who is the subject of an arrest warrant, aliases used, travel behavior and/or patterns, information provided by confidential source(s), and similar information. Such an All Writs Act application, also, would have asked the Court to order a third-party entity to take certain actions, described in detail, to help the government effectuate the warrant.

On January 25, 2021, petitioners filed a petition in this Court to request the unsealing of certain court records. Specifically, petitioners have asked the Court unseal (1) an All Writs Act order; (2) the government's application for that order and any supporting documents; (3) any other

court records relating to the order; and (4) the docket and all docket entries in the miscellaneous case number 15-mc-880.[1] In support of this request, petitioners claim that the public and the press, including petitioners, have "a strong interest" in the unsealing of these court records (collectively, "the All Writs Act materials"). Petitioners' Application, Dkt. #1, at 1-2.

The matter at case number 15-mc-880 is sealed. As of the date of this filing, law enforcement activities related to this matter are still ongoing.

## ARGUMENT

Neither the First Amendment nor the common law entitles petitioners to access the All Writs Act materials, and this Court should deny petitioner's unsealing request because compelling law-enforcement and privacy interests would favor continued sealing of All Writs Act materials that require third-party assistance in the execution of an arrest warrant.

**I.   THE FIRST AMENDMENT DOES NOT ENTITLE PETITIONERS TO UNSEALING**

The First Amendment protects a qualified right of access to several stages of criminal proceedings. *Press-Enterprise Co. v. Superior Court. of Calif. for Riverside County*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*); *see id.* at 9; *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 603-04 (1982) (recognizing "the First Amendment right of access to criminal trials"); *United States v. Thomas*, 905 F.3d 276, 281-82 (3d Cir. 2018) (recognizing compelling government interest in national security and safety may limit a First Amendment right to access to plea hearings and documents related to plea hearings); *North Jersey Media Group Inc.*

---

[1] On the same date, petitioners filed petitions in, at least, two other district courts to request the unsealing of alleged All Writs Act records in other criminal cases. *See In re Application of Forbes Media LLC and Thomas Brewster to Unseal Court Records*, No. 2:21-mc-7-RSM, Doc. 1 (W.D. Wash.) (filed Jan. 25, 2021); *In re Application of Forbes Media LLC and Thomas Brewster to Unseal Court Records*, No. 3:21-mc-80017-TSH, Doc. 1 (N.D. Cal.) (filed Jan. 25, 2021).

3

*v. United States*, 836 F.3d 421, 427-29 (3d Cir. 2016) (recognizing a First Amendment right to access a bill of particulars but denying a First Amendment, or common law, right of access to criminal discovery). When this qualified right attaches to a particular criminal proceeding, the proceeding may nevertheless be closed to the public if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14 (quoting *Press-Enterprise Co. v. Superior Court of Calif., Riverside County*, 464 U.S. 501, 510 (1984) (*Press-Enterprise I*)). Here, no First Amendment right of access attaches to any All Writs Act materials that petitioners seek to access, and in any event, compelling interests require the continued sealing of any such materials.

### A.  Petitioners Have No First Amendment Right of Access to the All Writs Act Materials

To determine whether a qualified First Amendment right of access attaches to a particular criminal proceeding, courts apply a two-part "experience and logic" test that considers (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8-9; *see also North Jersey Media Group Inc.*, 836 F.3d at 429. Petitioners' unsealing request fails both prongs of the experience-and-logic test, and petitioners have not claimed otherwise. Petitioners accordingly have no First Amendment right of access to any All Writs Act materials they seek to obtain.

One, no history of public access exists for proceedings relating to an All Writs Act order that requires a third party to assist in the execution of a federal arrest warrant. The Supreme Court first recognized a qualified First Amendment right of access to certain criminal proceedings in the context of criminal trials, which an "unbroken, uncontradicted" line of history showed to have "been open to all who care to observe." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555,

564, 578 (1980) (plurality). The Court later held that the right applies to jury selection and to the transcript of a "preliminary hearing" in a criminal case that "function[ed] much like a full-scale trial." *Press-Enterprise II*, 478 U.S. at 7, *see id.* at 10-13. The Third Circuit has extended the right to bills of particulars, *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) and some aspects of guilty plea proceeding, *Thomas*, 905 F.3d at 281-82.

But other stages of criminal proceedings have no tradition of public access. For example, "grand jury proceedings have traditionally been closed to the public and the accused." *Press-Enterprise II*, 478 U.S. at 10; *see also Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218 n.218. Criminal discovery also has traditionally been closed to the public. *North Jersey Media Group Inc.*, 836 F.3d at 427-29. In addition, "[t]he investigation of criminal activity has long involved imparting sensitive information to judicial officers who have respected the confidentialities involved." *U.S. Dist. Court for Dist. of Oregon*, 407 U.S. at 320-21. For example, the Ninth Circuit has found "no historical tradition of public access to warrant proceedings" during an ongoing investigation, even though search-warrant materials often become public after the government serves the warrant. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989); *see id.* at 1214; *see also United States v. U.S. Dist. Court for Eastern Dist. of Mich.*, 407 U.S. 297, 321 (1972) ("[A] warrant application involves no public or adversary proceedings: it is an ex parte request before a magistrate or judge."); *United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1194 (9th Cir. 2011) ("In the post-investigation context, warrant materials have generally been open to the public.").

Because an *ex parte* All Writs Act proceeding that would require third-party assistance in the execution of an arrest warrant would be ancillary to, and in furtherance of, the execution of an arrest warrant, it would not be a proceeding to which the public has historically had access. *See*

5

*In re Granick*, 388 F. Supp. 3d 1107, 1129 (N.D. Cal. 2019) ("There is no Ninth Circuit authority recognizing a First Amendment right to access technical assistance orders under the [All Writs Act]."). The government is aware of no court that has recognized a history of public access to All Writs Act proceedings that would require third-party assistance in the execution of an arrest warrant, and petitioners do not argue otherwise.

Instead, petitioners focus on the categories of documents in which they are interested (court orders, government applications, and docket sheets). However, the cases that petitioners cite neither support nor suggest that such documents have historically been available to the public regardless of the proceedings to which they relate. Courts do not consider the type of document at issue in isolation, untethered to the treatment of the proceeding in which the document appears. *See, e.g., United States v. Index Newspapers LLC*, 766 F.3d 1072, 1084 (9th Cir. 2014) (explaining that the experience-and-logic test is used "to determine whether the First Amendment right of access applies to a particular proceeding" and "documents generated as part of" it); *In re Copley Press*, 518 F.3d 1022, 1027-28 (9th Cir. 2008) (analyzing separately access to each type of document and hearing transcript, and even to those documents at different stages of the same hearing). And although courts have identified a right of access to docket sheets where the proceedings described in the docket were themselves generally subject to a right of access, courts have reached the opposite conclusion in cases involving grand jury matters and other orders authorizing pretrial investigative steps. *See, e.g., In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 295 (4th Cir. 2013) ("[W]e have never held, nor has any other federal court determined, that pre-indictment investigative matters such as § 2703(d) orders, pen registers, and wiretaps, which are all akin to grand jury investigations, must

6

be publicly docketed."); *In re Sealed Case*, 199 F.3d 522, 525-26 (D.C. Cir. 2000) (same for grand jury ancillary proceedings).

Two, considerations of "logic" also weigh against a right of access because public access would not "play[] a particularly significant positive role in" the functioning of proceedings to secure third-party assistance in executing arrest warrants. *Press-Enterprise II*, 478 U.S. at 9, 11. In support of their request for unsealing, petitioners contend that the public and the press have "a strong interest in observing and understanding the consideration and disposition of matters by the federal courts," especially when "the action of the Court concerns actions taken by the executive branch" or "would shed light on the government's collection of location records." Petitioners' Application, Dkt. #1, at 2. The Supreme Court has recognized, however, that "[a]lthough many governmental processes best operate under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly." *Press-Enterprise II*, 478 U.S. at 8-9. Courts have accordingly found that logic does not favor public access in circumstances where, as here, disclosure could hinder the government's ability to investigate crimes and to prosecute crimes.

For example, the Supreme Court has explained that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," in part because allowing public access to such "preindictment proceedings" would lead to "the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment." *Douglas Oil Co.*, 441 U.S. at 219. Likewise, the proceedings for the issuance of a search warrant are "necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence." *Franks v. Delaware*, 438 U.S. 154, 169 (1978); *see also Times Mirror Co.*, 873 F.2d at 1215 ("[I]f the warrant proceeding itself were open to the

public, there would be an obvious risk that the subject of a search warrant would learn of its existence and destroy evidence of criminal activity before the warrant could be executed."). And even if such a proceeding "remained closed but the supporting affidavits were made public when the investigation was still ongoing, persons identified as being under suspicion of criminal activity might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction." *Times Mirror Co.*, 873 F.2d at 1215; *see also Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (explaining that "the need for sealing affidavits may remain after execution and in some instances even after indictment"); *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 291-92 (4th Cir. 2013) (finding that "logic" does not favor disclosure in the context of Section 2703(d) orders); *In re Search of Fair Finance*, 692 F.3d 424, 432 (6th Cir. 2012) ("[P]ublic access to search warrant documents prior to the execution of a search would harm criminal investigations by enabling criminal suspects to learn of impending searches and by potentially leading them to remove or destroy evidence."); *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000) ("Unlike typical judicial proceedings, grand jury proceedings and related matters operate under a strong presumption of secrecy.").

Similar considerations have prompted at least one district court to find that the public has no First Amendment right of access to All Writs Act orders that require a third party to provide assistance "in furtherance of an underlying [search] warrant or surveillance order." *In re Granick*, 388 F. Supp. 3d at 1129-30. As that court explained, "[a]pplications for [All Writs Act] orders are typically issued during the covert stages of an investigation and contain an explanation of why the order is necessary to a criminal investigation." *Id.* at 1129. The materials from All Writs Act proceedings thus "may discuss confidential informants, cooperating witnesses, wiretap investigations, grand jury matters, and sensitive law enforcement techniques." *Id.*

Similar concerns would arise if the public gained access to papers generated and filed in an All Writs Act proceedings that sought third-party assistance in the execution of an arrest warrant. In such a proceeding, the All Writs Act materials most likely would reveal sensitive, non-public information such as the identity of the subject of an arrest warrant, other personal information associated with the subject of an arrest warrant, confidential sources of information, the existence of underlying grand jury investigation, and/or the existence of an indictment.

To guard against the risk that "criminal defendants not yet in custody may elude arrest upon learning of their indictment," *United States v. Balsam*, 203 F.3d 72, 81 (1st Cir. 2000), Federal Rule of Criminal Procedure 6(e) authorizes a magistrate judge to order the sealing of an indictment "until the defendant is in custody or has been released pending trial." Fed. R. Crim. P. 6(e)(4). Similar concerns warrant the sealing of ancillary All Writs Act proceedings aimed at effectuating an arrest based on the charges in an indictment. Conversely, opening documents from an All Writs Act proceedings that sought third-party assistance in the execution of an arrest warrant to public view could prompt the target to flee, to change aliases, to change behavioral and/or travel patterns, to identify and retaliate confidential sources, or to take other steps to thwart the execution of the warrant.

Furthermore, even after an underlying arrest warrant has been executed, records from the ancillary All Writs Act proceedings are likely to reveal techniques that the government used to effectuate the arrest and to explain a third party's ability or willingness to provide certain types of assistance in furtherance of the government's efforts. Dissemination of those materials would enable wrongdoers to take measures to evade future arrests, including by avoiding or even retaliating against sources of information who assisted the government and/or against the third party who was ordered to assist the government. "Openness" here thus would "frustrate criminal

investigations and thereby jeopardize the integrity of the search for truth that is so critical to the fair administration of justice." *Times Mirror*, 873 F.2d at 1213.

Because both experience and logic therefore weigh against a public right of access to ancillary All Writs Act proceedings aimed at effectuating an arrest, petitioners have no qualified First Amendment right to access such materials.

### B. Compelling Interests Require the Continued Sealing of All Writs Act Materials

Even if petitioners had a qualified First Amendment right to access All Writs Act materials, the Court should continue to maintain such records under seal because "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14 (quoting *Press-Enterprise I*, 464 U.S. at 510); *see also North Jersey Media Group Inc.*, 836 F.3d at 429. Unsealing an All Writs Act proceedings that sought third-party assistance in the execution of an arrest warrant could jeopardize ongoing efforts to investigate and prosecute the underlying crimes, for instance, by alerting the subject of information known to the government that could assist in the effectuating the subject's arrest and by revealing steps that the government and others might take to effectuate such an arrest. Opening such information to the public could prompt the subject or his associates to take steps to further conceal themselves from law enforcement and to evade responsibility for their crimes.

More generally, "[t]he government has a substantial interest in protecting sensitive sources and methods of gathering information." *United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985) (en banc). That interest is compelling because granting the public access to such sources

and methods could give wrongdoers a roadmap for thwarting future efforts to use similar techniques to investigate crimes and effectuate arrest warrants.[2]

The strength of that government interest is not diminished by petitioners' public reporting that Sabre offers the government "another tool to watch over travelers across the world."[3] Thomas Brewster, *The FBI Is Secretly Using A $2 Billion Travel Company As A Global Surveillance Tool*, Forbes (July 16, 2020), available at https://www.forbes.com/sites/thomasbrewster/2020/07/16/the-fbi-is-secretly-using-a-2-billion-company-for-global-travel-surveillance--the-us-could-do-the-same-to-track-covid-19/. Although petitioners described specific assistance that the government asked Sabre to provide in one case, petitioners' article otherwise provides only generalized information about Sabre's potential capacity to provide "traveler information" to assist the government in criminal investigations and prosecutions. *See id.* All Writs Act proceedings that seek third-party assistance in the execution of an arrest warrant are likely to contain sensitive information beyond what petitioners have publicly reported, consistent with petitioners' own statement that "more questions" remain about the nature and frequency of the assistance that a third-party entity has provided, and is willing to provide, to the government. *Id.* When unsealing materials would reveal "significantly more information" implicating compelling government interests, public awareness of some details about that matter does not vitiate those interests. *Dhiab v. Trump*, 852 F.3d 1087, 1096 (D.C. Cir. 2017);

---

[2] For this reason, redactions are not a feasible solution. Substantively, the petitioners are seeking disclosure concerning law enforcement's techniques for and method of gathering information. Thus, there is no practical manner by which redaction of an All Writs Act proceedings that sought third-party assistance in the execution of an arrest warrant could avoid disclosure of law enforcement's techniques and methods.

[3] As noted earlier, Forbes reported on an All Writs Act application and order that was erroneously unsealed by a clerk of court. That error has been corrected, and the SDCA application and order are under sealed.

*see also Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567 (4th Cir. 2004) (considering "whether the granting of access to the contents of an ongoing police investigation file will disclose facts that are otherwise unknown to the public"); *Index Newspapers LLC*, 766 F.3d at 1087-88 (grand jury witness's decision to "disclose what he may have learned about the grand jury investigation" did not eliminate government's interest in grand jury secrecy).

In any event, in cases addressing the qualified law-enforcement privilege in criminal prosecutions, courts allow the government to withhold information from criminal defendants about specific law-enforcement techniques when disclosure would compromise the efficacy of that technique in future criminal investigations, even though the criminal defendant and the public may know that the government employs that practice as a general matter. *See, e.g., In re the City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) ("detailed information about the undercover operations of the NYPD"); *United States v. Green*, 670 F.2d 1148, 1155-56 (D.C. Cir. 1981) ("police surveillance locations"). If the government's interest in preserving the efficacy of evidence-gathering techniques in future investigations can be strong enough to keep that information from a criminal defendant facing loss of liberty, then it surely is sufficient to shield that information from the public at large, especially given the strong public interest in ensuring the effective investigation of crime. *Cf. Doe*, 870 F.3d at 1000 (recognizing that the government interest in cooperator safety is based in part on the need to advance "future criminal investigations").

## II. THE COMMON LAW DOES NOT ENTITLE PETITIONERS TO UNSEALING

The Supreme Court has recognized a qualified "common-law right of access to judicial records," which amounts to "a general right to inspect and copy public records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). This right is "not absolute."

*Id.* at 598. Rather, "[e]very court has supervisory power over its own records and files," *id.*, and must "weigh[] the interests advanced by the parties in light of the public interest and the duty of the courts," *id.* at 602. *See also Gonzalez v. Cuccinelli*, __ F.3d __, 2021 WL 127196, at *14 (4th Cir. Jan. 14, 2021); *LEAP Systems, Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 221-22 (3d Cir. 2011); *Doe*, 962 F.3d at 145 (4th Cir.); *United States v. Sleugh*, 896 F.3d 1007, 1013 (9th Cir. 2018). The Supreme Court has therefore recognized that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

In the Third Circuit, the common-law right to access may not encompasses All Writs Act materials. Although the Third Circuit has recognized that "[t]he common law right of access is not limited to evidence, but rather encompasses all 'judicial records and documents,'" *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) (citation omitted), the Court has subsequently recognized no common-law right of access attaches to grand-jury materials because they "have historically been inaccessible to the press and the general public," *United States v. Smith*, 123 F.3d 140, 156 (3d Cir. 1997). Additionally, the common law right of access is narrower than the First Amendment right of access. *North Jersey Media Group Inc.*, 836 F.3d at 434. The common law right of access is focused on whether a document is part of a "judicial record," which "depends on whether the document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *North Jersey Media Group Inc.*, 836 F.3d at 434. An All Writs Act application that seeks third-party assistance in the execution of an arrest warrant would be akin to search warrants applications, 2703(d) applications, pen-trap applications, and wiretap applications. These types of matters are not part of an adjudicatory proceedings as contemplated by the Third Circuit. Thus, the common-

law right to access does not encompasses All Writs Act materials that seeks third-party assistance in the execution of an arrest warrant.

Nevertheless, even if some All Writs Act records were judicial documents to which a common-law right of access might attach, *Nixon*, 435 U.S. at 597, the common law does not entitle petitioners to unsealing of All Writs Act proceedings that seeks third-party assistance in the execution of an arrest warrant because of the compelling government interests described above, *supra*, outweigh any presumption of public access. The continued sealing of the All Writs Act materials is accordingly a proper exercise of this Court's discretion under the common law.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny petitioners' request for unsealing.

>                          Respectfully submitted,
>
>                          SCOTT W. BRADY
>                          United States Attorney
>
>                   By:    s/ *Shardul S. Desai*
>                          SHARDUL S. DESAI
>                          Assistant U.S. Attorney